## WALKER et al. v. MILLER.

### (Circuit Court of Appeals, Eighth Circuit. January 29, 1894.)

### No. 303.

1. REVIEW ON ERROR—WAIVER OF JURY—FINDINGS OF FACT.

On a writ of error in a case in which a jury has been waived in writing, the court cannot inquire whether the special findings are sustained by the evidence; and in the absence of exceptions to the admission or exclusion of evidence, or to rulings upon declarations of law tendered to the court, the review is limited to the question whether the judgment is supported by the pleadings and findings.

2. CORPORATIONS—INSOLVENCY—PREFERENCES.

If the theory that corporate property is a trust fund for its creditors is invoked to invalidate a conveyance which operates a preference, there is no reason why it should not also operate to prevent complaining creditors from obtaining priority by an attachment.

3. SALE—BONA FIDE PURCHASERS—ATTACHMENT.

A purchaser in good faith, for full value, without notice of defects in the seller's title, can hold the property, as against an attaching creditor of the corporation from which the seller obtained it, even if the seller had notice of the insolvency of the corporation, and his title would have been invalidated thereby.

In Error to the Circuit Court of the United States for the District of Kansas.

At Law. Action to recover damages for wrongful attachment, brought by Charles R. Miller against Richard L. Walker and the sureties on his official bond as United States marshal for the district of Kansas; said sureties being George R. Peck, Lyman U. Humphrey, and Orrin E. Walker. A jury was waived by stipulation in writing. Findings by the court and judgment in favor of plaintiff. Defendants bring error. Affirmed.

Henry L. Call, (David Overmyer, on the brief,) for plaintiffs in error.

Henry Keeler, for defendant in error.

Before CALDWELL, Circuit Judge, and THAYER, District Judge.

THAYER, District Judge. This writ of error was brought mainly for the purpose of presenting the question whether a business corporation, when it becomes insolvent, thereafter holds all of its property

in trust for equal distribution among its creditors, and is deprived of the common-law power of preferring creditors, which individuals ordinarily possess. But the record fails to present the question in such form that it can properly be determined. The case was tried before the circuit court on a written stipulation waiving a jury, and there was a special finding of facts. No exceptions were taken to the admission or exclusion of testimony, which have been argued in this court, and no instructions were either asked, given, or refused. The record contains the pleadings, the special findings, the judgment, and a bill of exceptions showing the testimony upon which the findings of fact were predicated; but, as no exceptions were saved by the bill of exceptions which we are asked to review, it might as well have been omitted from the record. In the federal appellate tribunals, it is well settled that the only question presented for consideration by a record like the one now in hand is whether the pleadings and the special findings of fact are adequate to support the judgment. Neither the supreme court nor the court of appeals will undertake to determine, in a case like the one at bar, whether the special findings are supported by the testimony contained in the bill of exceptions, for to do so would be simply to review the decision of the trial court on questions of fact, rather than of law. By filing a written stipulation waiving a jury, the parties to the litigation may impose upon the circuit court the duty of making a general or special finding on questions of fact, but they cannot impose upon an appellate court a like duty. The finding of the trial court, whether it be general or special, has the same conclusive effect when the record is removed by writ of error to an appellate tribunal as a similar finding by a jury; and exceptions must be saved and presented in the same manner, either by objections to the introduction or to the exclusion of testimony, or by tendering declarations of law and obtaining a ruling thereon. These several propositions are well established by repeated adjudications. Insurance Co. v. Folsom, 18 Wall. 237, 249; Cooper v. Omohundro, 19 Wall. 65, 69; Norris v. Jackson, 9 Wall. 125, 127; Schuchardt v. Allans, 1 Wall. 359; Kearney v. Case, 12 Wall. 275; Burr v. Navigation Co., 1 Wall. 99; Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481; Martinton v. Fairbanks, 112 U. S. 670, 5 Sup. Ct. 321; Bank v. Farwell, 6 C. C. A. 24, 56 Fed. 570.

The suit at bar was an action on the official bond of the United States marshal for the district of Kansas, against him and his sureties, for a wrongful levy on the property of Charles R. Miller under a writ of attachment issued by the United States circuit court for the district of Kansas against the Alma Coal-Mining Company. The property in question had been sold by the coal company, prior to the levy, to one J. H. Bailey, and Bailey had sold the same to Charles R. Miller, the defendant in error, who was in possession of the same when the levy was made. The circuit court found, in substance, that the coal company was indebted to Bailey in the sum of $17,500; that the property in question (a large stock of merchandise) was transferred by the coal company to Bailey in payment of such indebtedness; that at the time of such transfer

the coal company was indebted to other persons in the sum of $13,263; that the assets of the coal company consisted of coal lands, leases for coal lands, machinery, etc.; that the property of the coal company, outside of its said stock of goods, was worth the sum of $60,000; that a portion of the company's lands were incumbered by mortgage, and that for some months prior to the sale to Bailey other creditors of the coal company were pressing for the payment of their demands, and that the coal company had no ready money to pay the same; that judgments had been recovered upon several claims against the coal company; and that executions had been levied thereon prior to the sale to Bailey. It further found, in substance, that at the time of the sale to Bailey he did not know the amount of the other indebtedness of the coal company, and did not know whether the company would eventually succeed in paying its debts, but that he did know that it was indebted to other persons than himself, who were pressing for the payment of their demands. It also found that Bailey sold and delivered the property in controversy to Charles R. Miller; that Miller paid for the stock of goods the sum of $17,000, which was the full market value of the property; that Miller was a purchaser of the property, in good faith, for its full market value, and was the owner thereof at the date of the levy of the writ of attachment thereon by the United States marshal. The court further found that the writ of attachment against the coal company was levied upon the property in controversy while the same was in the possession of Miller, and that the value of the goods so levied upon and sold was $9,366.83. Having made these findings, the circuit court held that Miller was entitled to a judgment in the sum of $9,366.83, which it accordingly rendered.

The principal contention of the plaintiffs in error seems to be that the foregoing findings show that the Alma Coal Company was practically insolvent, and for that reason was incapacitated from making the sale to Bailey, because it operated as a preference. But, if this contention was meritorious, is it not obvious that the attaching creditors are attempting to secure a like preference over other creditors of the coal company, and that their effort in that behalf will be successful if they prevail in the present action? If this trust-fund theory is to be adopted to prevent the corporation from granting a preference because of its insolvency, we know of no reason why it should not be invoked to keep attaching creditors at bay, and thus relegate the disposal of the fund, so far as judicial proceedings are concerned, to a court of equity. Vide Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, and Brown v. Furniture Co., 7 C. C. A. 225, 58 Fed. 286, 292.

But we do not find it necessary or proper to express any opinion with reference to the question whether a state of insolvency precludes a corporation from making a conveyance which will operate as a preference, for, even if such was the law, the findings in the present case clearly show that Miller was a purchaser for value, in good faith, and without notice of any defect in Bailey's title to the property in controversy. It is not contended, as we under-

stand, that the insolvency of the coal company impairs Miller's title, unless he had notice of such insolvency. It is simply insisted that under the testimony contained in the record the trial court should have found that Miller was not an innocent purchaser for value. In other words, we are asked to review certain findings of fact, and to determine whether they were authorized by the evidence preserved in the bill of exceptions. As we have already sufficiently shown, this is a duty which is not imposed on this court by the present record. We have no doubt that the judgment below is amply sustained by the pleadings and the special findings of fact, wherefore the same must be affirmed, and it is so ordered.