## WELLS FARGO BANK & TRUST CO. v. McLAUGHLIN, Collector of Internal Revenue.

### No. 19362K.

District Court, N. D. California, First Division.

May 29, 1934.

Treat & Ogden, of San Francisco, Cal., for plaintiff.

H. H. McPike, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

KERRIGAN, District Judge.

This case comes before me on a primary stipulation of facts and a supplementary stipulation of facts received in the case subject to reserved rulings on the admissibility of two of its paragraphs and on the testimony of one witness. The principal question in the case is whether or not Frederick A. Robbins, of whose estate plaintiff is executor, made a profit in his dealings in the stock of the East Bay Water Company. This question resolves itself into two separate questions. The first is: What is the measure of the value of the stock at the time it was acquired? The second question is: Were the dividends received during the years Robbins owned the stock paid exclusively out of earnings or did they include payment out of capital resulting from an insufficient deduction for depreciation?

The circumstances under which Robbins acquired this stock were somewhat unusual. Late in 1916 Robbins was the owner of bonds of the People's Water Company. There was a reorganization in the course of which the East Bay Water Company was formed, the bondholders of the first company foreclosed the mortgages securing the bonds, and the property of the People's Water Company

was bought in at the foreclosure sale by the East Bay Water Company. The bondholders, among whom was Robbins, who had surrendered their bonds to a certain bank acting as trustee, were given stock in the East Bay Water Company. Robbins received for his surrendered bonds the right to 270 shares of A stock and 180 shares of B stock in the new company. This stock was not delivered to its owners but was delivered in escrow to the bank which acted as trustee under an agreement that none of the stock should be delivered within five years and that during the five-year period, the bank should exercise the voting power of the stock to secure, in effect, the continuance in office of a certain board of directors for that period. At the time of the execution of the trust agreement, the physical assets of the East Bay Water Company had a greater actual value than the aggregate par value of the stock issued in accordance with the trust agreement. It is stipulated that the date on which Robbins acquired his rights in this stock was January 2, 1917, and that the cost of the stock was its value on that date. To each bondholder in the old company was issued a trustee's certificate evidencing his right to the delivery of the stock January 2, 1922. During the year 1917, the trust certificates were sold by brokers on the market at a figure substantially less than the par value of the stock. There was no sale of the stock of the East Bay Water Company itself except for 72 shares sold during the same year of 1917, and those sales were made for the par value of the stock. It is contended by the government that the sales of these trust certificates establishes the fair market value of the stock. The objection to the admissibility of paragraph 1 of the supplementary stipulation of facts is overruled.

I do not believe that, under all of the circumstances of this case, these sales are the measure of the value of the stock. Aside from the sale of the 72 shares of stock at par, there were, and, because of the terms of the trust agreement, could be no sales of the stock at that time. The trust certificates represented the rights of ownership in the stock, but it was a right divorced from possession for five years and divorced from a voice in the management of the company for the same period. The price a person would pay for this limited and partial right is not a fair measure of the value of the stock itself. This view is strengthened by the fact that the 72 shares sold were sold at par. Where there are no market sales of a security to evidence its fair market value, the intrinsic value of the security may be looked to. Walter v. Duffy (C. C. A.) 287 F. 41; Rice v. Eisner (C. C. A.) 16 F.(2d) 358. I find that the selling price of the trust certificates shortly after January 2, 1917, does not establish the fair market value of the stock on that date; I further find that there was no fair market value of the stock of the East Bay Water Company on January 2, 1917, and that the intrinsic value of the A stock of said corporation on that date was $100 per share and that the intrinsic value of the B stock of said corporation was $100 per share.

The remaining question concerns the return of capital during the period Robbins owned the stock. If the depreciation charged off was too low, and the depreciation was greater than charged, then there was a return of capital to the extent that dividends were paid out of the sum properly chargeable to depreciation. There are three bases of figuring depreciation offered. One is the actual observed depreciation to which a witness has testified. Another is the so-called "sinking fund" basis approved by the California Railroad Commission and adopted by the corporation in keeping its books and in computing the amounts available for dividends. The third is the so-called "straight-line" basis which is substantially higher than either of the others and was the theory of depreciation adopted by the East Bay Water Company in making a claim for refund of income taxes for the years 1918 to 1921, inclusive. The refund was allowed and the same theory of depreciation was followed by the water company in all of its subsequent income tax reports.

An amendment to the answer sets up the transactions between the water company and the Commissioner of Internal Revenue with reference to depreciation allowance from 1918 to 1928, and pleads that Robbins, as stockholder, is estopped from claiming any other basis of computing depreciation. There is a motion to strike this amended answer from the files on the ground that a stockholder is not bound by the corporate action. There is also a reserved objection to paragraph 3 of the supplementary stipulation of facts which sets up these same transactions. While I do not wish to go so far as to hold that the stockholder is estopped from claiming another basis of depreciation than that claimed by the corporation, under the facts and circumstances of this case, it appeals to me as meritorious that the Com-

missioner should use the same figures of depreciation in computing whether or not dividends were paid out of capital as were claimed by the corporation in computing its income tax. While the depreciation approved by the Railroad Commission is persuasive as to its correctness, the Commissioner of Internal Revenue is not bound by its findings and orders. San Joaquin Light & Power Corp. v. McLaughlin (C. C. A. 9) 65 F.(2d) 677. Without going into the merits of the respective methods of computing depreciation, I hold and find that the depreciation claimed by the East Bay Water Company in computing its income tax is the depreciation which may properly be used by the Commissioner in computing whether or not the dividends paid included a return of the capital investment. The motion to strike the amended answer is denied. The objections to the admissibility of paragraph 3 of the supplementary stipulation of facts are overruled.

The additional assessment paid by Robbins under protest for the taxable year 1928 was excessive and plaintiff is entitled to recover a part thereof computed as follows:

| | | |
|---|---|---|
| Received on distribution of proceeds of sale of assets | | $46,651.32 |
| Original cost of stock | $45,000.00 | |
| Less return of capital | | |
| on "A" stock | $5,434.48 | |
| on "B" stock | 4,258.62 | 9,693.10 |
| Actual cost of the stock | | 35,306.90 |
| Taxable gain on transaction | | $11,344.42 |
| Less gain admitted by taxpayer | $1,551.32 | |
| (which has already been included in adjustment by Commissioner) | | 9,793.10 |

The tax on $9,793.10 at 12½ per cent. is $1,224.14, and this sum should be deducted from the amount claimed by plaintiff, namely $2,208.77, leaving a balance of $984.63 recoverable from the Commissioner.

I adopt this opinion as my findings of fact and conclusions of law, and the motions of the respective parties for special findings are denied; exceptions are noted as to all adverse rulings in this opinion in behalf of each party.

Let judgment be entered for plaintiff for $984.63 together with interest and costs. As to interest, it is apparent that there should be some adjustment on the basis of the interest paid by the taxpayer at the time of the payment of the additional assessment. Let a supplementary finding as to interest be presented.