WELLS FARGO BANK & UNION TRUST
CO. v. McLAUGHLIN, Internal
Revenue Collector.

No. 7694.

Circuit Court of Appeals, Ninth Circuit.
Aug. 12, 1935.

Rehearing Denied Sept. 6, 1935.

Treat & Ogden, of San Francisco, Cal., for appellant Wells Fargo Bank & Union Trust Co.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and John Mac C. Hudson, Sp. Assts. to Atty. Gen., H. H. McPike, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellee McLaughlin.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

This action was brought to recover the sum of $3,470.98 alleged to have been unlawfully assessed and collected from Frederick A. Robbins as additional income taxes for the year 1928. On March 12, 1932, Robbins filed with the Commissioner of Internal Revenue a claim for refund of the tax, which was disallowed on January 18, 1933. Robbins died on May 27, 1932, while the claim for refund was pending, and on July 7, 1933, Wells Fargo Bank & Union Trust Company, as executor of his last will and testament, filed this action to recover the amount of the tax from the collector of internal revenue. There was judgment for the executor in the sum of $1,089, from which both the executor and the collector have appealed. The facts are as follows:

In the year 1916, Robbins owned bonds of the Peoples Water Company, a California public utility corporation, of the par value of $45,000. On January 2, 1917, these bonds were exchanged for 270 shares of class A preferred stock and 180 shares of class B preferred stock of the East Bay Water Company, another public utility corporation of California. The exchange was in pursuance of a plan of reorganization to which both companies were parties. No money was received upon the exchange.

The East Bay Water Company commenced operations on January 1, 1917, and continued in business until December 8, 1928, when the assets of the company were sold and its capital stock redeemed. During those years dividends were paid on the stock, and Robbins received his proportionate share of such dividends and reported them in his income tax returns for the respective years. Upon liquidation of the company, the owners of the preferred stock, including Robbins, received as capital distributions the sum of $101.116 for each share of A stock and $107.50 for each share of B stock. In his income tax return for the year 1928, Robbins reported the cost basis of the stock of the East Bay Water Company acquired by him on January 2, 1917, at $101.116 per share for the A stock and $107.50 per share for the B stock, the prices received by him when the stock was redeemed on liquidation of the company.

Upon audit of the return filed by Robbins, the Commissioner determined that the original cost basis of the stock of the East Bay Water Company acquired by Robbins was $88 per share for the A stock and $23 per share for the B stock, and that, consequently, upon the redemption of his stock, Robbins realized a substantial profit. The additional tax resulting from this adjustment represents, in part, the amount sought to be recovered in this action.

The return was further adjusted and the tax further increased by the determination of the Commissioner that the dividends paid on the stock of the East Bay Water Company had been paid in part from capital, rather than from earnings, the part so paid amounting to $20.1277 on each share of A stock and $23.659 on each share of B stock, and that therefore the cost basis of the stock should be reduced accordingly, as provided by section 115 (d) of the Revenue Act of 1928, c. 852, 45 Stat. 822, 26 USCA § 2115 (d). In determining the extent to which the dividends had been paid from capital rather than earnings, the Commissioner deducted from the gross income of the company the amount of depreciation claimed by and allowed the company for income tax purposes from 1917 to 1928, inclusive, aggregating $4,631,335. Computing depreciation by this method and deducting it from gross income, the balance or surplus was insufficient to meet dividend requirements. Hence the Commissioner determined that the dividends were paid in part from capital and constituted, pro tanto, a return of capital to Robbins. The additional tax assessed and paid upon this adjustment of the return represents the remainder of the amount sought to be recovered in this action.

In his claim for refund, Robbins asserted that the cost basis of the stock when acquired by him was the same as the price received therefor on liquidation of the company, and that he received no distributions from capital from the company, with the exception of the final distribution on liquidation, and that all dividends received by him were paid from earnings of the company available for dividends. After disallowance of the claim for refund, this action was brought, and the case proceeded to trial before the court without a jury. A memorandum opinion was filed by the court and adopted as its findings of fact and conclusions of law. 8 F. Supp. 1009. The court held that the Commissioner erred in fixing the original cost basis of the A and B stock at $88 and $23 per share, respectively, and held that, for each class of stock, such cost basis should have been fixed at $100 per share. Accordingly, judgment was entered in favor of the executor for $984.63, plus $104.37 interest paid, or $1,089.00, with interest from the date of payment. The court further held that the Commissioner correctly determined that Robbins received, pro tanto, a return of capital. Judgment for the balance of the refund claimed was therefore denied.

The executor has appealed from the finding and judgment that the dividends distributed by the company were paid in part from capital, and the collector has filed a cross-appeal from the finding and judgment that $100 per share represents the cost basis of the stock. We will first consider the executor's appeal.

■ The District Court sustained the Commissioner's determination that the dividends distributed by the East Bay Water Company were paid in part from capital. The correctness of this finding depends on the amount of depreciation in the property and assets of the company properly allowable for the years 1917 to 1928, inclusive. In sustaining the Commissioner's determination, the District Court in effect held that the proper amount was $4,631,335. This finding is supported by the fact, stipulated by the parties, that, for income tax purposes, depreciation in the amount of $4,631,335 was claimed by and allowed to the company for the years in question. Opposed to such finding is the fact, also stipulated by the parties, that the amount of depreciation shown on the books of the company was only $2,023,208. There was also the testimony of an expert witness to the effect that the actual depreciation was only $1,757,633. The evidence being thus in conflict, the District Court might have adopted either of these amounts or any intermediate amount as the proper allowable depreciation. The court did adopt the amount first mentioned. That finding is supported by the evidence. That there was other evidence which might have warranted a different finding is immaterial. We cannot pass upon the weight of the evidence. United States v. Jefferson Electric Mfg. Co., 291 U. S. 386, 407, 54 S. Ct. 443, 78 L. Ed. 859; Law v. United States, 266 U. S. 494, 496, 45 S. Ct. 175, 69 L. Ed. 401; Dooley v. Pease, 180 U. S. 126, 131, 21 S. Ct. 329, 45 L. Ed. 457; Runkle v. Burnham, 153 U. S. 216, 225, 14 S. Ct. 837, 38 L. Ed. 694; St. Louis v. Rutz, 138 U. S. 226, 241, 11 S. Ct. 337, 34 L. Ed. 941; Hathaway v. Cambridge First National Bank, 134 U. S. 494, 498, 10 S. Ct. 608, 33 L. Ed. 1004; Stanley v. Supervisors, 121 U. S. 535, 547, 7 S. Ct. 1234, 30 L. Ed. 1000. We hold, therefore, that the executor's appeal is without merit.

■ We next consider the cross-appeal. The District Court's opinion states that it is stipulated that the cost of the stock was its value on January 2, 1917. 8 F. Supp. 1009, 1010. There is no such stipulation in the record. The stock in question was acquired in exchange for bonds of another corporation in pursuance of a plan of reorganization to which both corporations were parties. No money was received upon the exchange. Hence the cost basis of the stock was the cost of the bonds, "increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made." Revenue Act of 1928, c. 852, §§ 112 (b) (3), 113 (a) (6), 45 Stat. 816, 819, 26 USCA §§ 2112 (b) (3), 2113 (a) (6).

■ There was in the District Court neither stipulation nor proof as to the cost of the bonds nor as to the amount of gain or loss that was recognized upon the exchange of bonds for stock. There was and is, therefore, nothing to overcome the presumption that the Commissioner's determination of the cost basis of the stock was correct. Old Mission Portland Cement Co. v. Helvering, 293 U. S. 289, 294, 55 S. Ct. 158, 79 L. Ed. ——; Welch v. Helvering, 290 U. S. 111, 115, 54 S. Ct. 8, 78 L. Ed. 212; Burnet v. Houston, 283 U. S. 223,

227, 51 S. Ct. 413, 75 L. Ed. 991. See, also, McLaughlin v. Pacific Lumber Co., 293 U. S. 351, 356, 55 S. Ct. 219, 79 L. Ed. 423. In finding the original cost basis of the stock to be greater than that determined by the Commissioner, the District Court committed reversible error.

Judgment reversed.